**Azarig KOOLOIAN et al.**

v.

**TOWN COUNCIL OF BRISTOL.**

**No. 88–545–M.P.**

Supreme Court of Rhode Island.

March 30, 1990.

Joseph A. Capineri, Capineri & Crowley, Pawtucket, for plaintiffs.

Vincent J. Santaniello, John E. DeCubellis, Jr., Hinckley, Allen, Snyder & Comen, Providence, for defendants.

OPINION

FAY, Chief Justice.

This case is before the court on the petition for certiorari of Azarig Kooloian and Elizabeth Kooloian (petitioners). The respondents include the Town Council of Bristol (town council) and more than seventy-five neighbors permitted to intervene as party defendants. The petitioners challenge the town council's denial of their application for a demolition permit involving a building located in what is now zoned a historic district. We find that the denial of the demolition permit was within the authority of the town council.

The facts pertinent to this appeal, insofar as they can be ascertained from a sparse record, are as follows. The controversial building, located at 202 Hope Street in the town of Bristol, was constructed by a Bristol sea captain in the middle of the nineteenth century. In March 1987 petitioners contracted with William and Rosemond Angevine (Angevines) to purchase this property. The petitioners intended to construct five new units on the property, and the contract provided for a price reduction in the event that local zoning requirements prevented the issuance of a building permit for this purpose. The Angevines subsequently applied for permission to demolish the existing building and for the variance required for the construction of five new units. In their application for a variance and demolition permit, the Angevines stated that the building was not in a historic district or on the National Register of Historic Places. The record indicates, however, that the house was listed on the National Register as part of the Bristol Waterfront Historic District. Furthermore the house was included in a 1971 statewide survey of historical buildings.

On July 14, 1987, the Zoning Board of Review for the Town of Bristol entertained the Angevines' application for a variance. The petitioners were present at the hearing. Due to conflicting interpretations of the town zoning ordinance, however, a decision by the board was postponed until more information could be obtained.

In the interim the Historical Preservation Commission (commission), in a letter dated August 13, 1987, expressed its concern over any changes made to the structure located at 202 Hope Street. The executive director, Edward F. Sanderson, wrote:

"This house is listed on the National Register of Historic Places as part of the Bristol Waterfront Historic District, a large area of well preserved historic buildings which document Bristol's history as a colonial and nineteenth-century port town, as an industrial center, and as a summer resort. Listing in the National Register is a special honor reserved for structures and areas which have made a significant contribution to the history of our towns, state, and nation. The historic character of Bristol is of special concern both to the Historical Preservation Commission and to the citizens of Bristol.

"The character of this district is derived partly from its large and architecturally important houses and public buildings, but the more numerous and smaller eighteenth- and nineteenth-century houses set in rows along the many streets leading up from the harbor are equally important. The special quality of Bristol's waterfront district results from the presence in well preserved condition of such a large number of houses from the town's early years. Such a group of historic buildings is indeed rare and is a testimony to the care which Bristol citizens have given their rich heritage of fine architecture, a heritage which can be diminished by demolitions or unsympathetic alterations."

Two additional hearings were then held on August 18, 1987, and September 15, 1987. At the September hearing the zoning board denied the Angevines' application. The Angevines appealed the decision of the zoning board to the Superior Court, and petitioners were later substituted as plaintiffs.[1] Despite the obvious controversy surrounding the property, petitioners took title in October 1987.

The petitioners assert that the building official for the town of Bristol issued them a demolition permit.[2] The location of the property, however, mandated that petitioners also obtain approval from the Coastal Resources Management Council (CRMC) created by Rhode Island General Laws.

[1] The appeal from the zoning board's decision is presently pending before the Superior Court. We are not asked to construe the language of the Bristol zoning ordinance in dispute; rather we are considering the jurisdiction of the town council to entertain petitioners' application for a demolition permit.

[2] There is no copy of the alleged permit in the record. Further, it is unknown when the permit was issued.

General Laws 1956 (1988 Reenactment) § 46–23–1. Pursuant to § 220.C.3 of the Coastal Resources Management Program, CRMC was required to "solicit the recommendations of the Historical Preservation Commission" regarding possible adverse impacts of actions taken with respect to properties having historic significance. In response to the request of CRMC, the commission recommended against the issuance of a demolition permit.

Had petitioners obtained the additional permission of CRMC, the alleged permit originally issued by the town building official would nevertheless have been ineffective. Pursuant to a resolution approved by the town council in September 1986, the building official was required to submit to the town council all requests for permits applied for in the historic district. It should be noted that at the time petitioners purchased the controversial property, it was not in a zoned historic district. The record indicates, however, that at the time of purchase the nineteenth-century house was listed on the National Register of Historic Places. In May 1988 the town council extended the historic zone to include 202 Hope Street. In June 1988 the building official accordingly notified petitioners of the moratorium placed on any potential demolition of the building at 202 Hope Street.

Finally in September 1988 the town council requested a recommendation from the Bristol Historic District Commission regarding petitioners' permit application. The Bristol Historic District Commission unanimously agreed that the building retained historic significance and should not be destroyed. In November 1988, relying upon this recommendation, the town council denied the demolition permit.

The petitioners, while the appeal from the zoning board's decision is pending, filed this petition for a common-law writ of certiorari. We granted the request, allowed the neighbors to intervene, and directed the parties to address, in addition to other appropriate issues, the "Town Council's jurisdiction to act upon an application for [a] demolition permit such as that filed by the petitioners."

General Laws 1956 (1988 Reenactment) chapter 24.1 of title 45 authorized city or town councils to regulate the construction, alteration, and demolition of any structure within its limits possessing historic or architectural value. Pursuant to this authority the town council created the Historic District Commission to "[s]afeguard the heritage of the Town of Bristol by preserving one or more historic districts and other designated structures of historic or architectural value in the town which reflect elements of Bristol's cultural, social, economic, political, and architectural history." Bristol Town Code § 9.5–2.1, enacted by Ord. No.1987–02 (May 13, 1987).

The enabling legislation of chapter 24.1 of title 45 also requires owners of structures possessing historic significance to file for a certificate of appropriateness for any proposed alterations. Section 45–24.1–4. Accordingly the Bristol Town Code provides for the submission of plans to the town building official for any construction affecting a historic structure. Bristol Town Code § 9.5–5. The town building official, in turn, must submit the property owner's application to the Historic District Commission for a certificate of approval or rejection. *Id.*, § 9.5–5(c)(1). Further, "[i]n the case of rejection, the commission shall state the reasons for disapproval in writing on the certificate of rejection or attached thereto * * *. A certificate of rejection shall be binding upon the building official or town government entity applicant, and no permit shall be issued or work authorized in such a case." *Id.*, 9.5–5(c)(5)–(6).

■ Given the foregoing legislation, any demolition permit purportedly issued by the building official to petitioners or their predecessors in title was invalid. Any alterations affecting a structure having historic significance must first be approved by the Historic District Commission. The petitioners assert that the building official alone issued the requisite permit. He was without any authority to do so. Although at the time of the purported issuance the house was not included in a zoned historic

district, it was listed on the National Register of Historic Places as part of the Bristol Waterfront Historic District and clearly possessed some historic or architectural significance. Therefore, the building official should have sought approval from the Historic District Commission.

Assuming, arguendo, that the demolition permit was issued prior to the creation of the Bristol Historic District Commission in May 1987, we believe it remains invalid. Pursuant to a resolution of the Bristol Town Council, a stay was placed on all permits applied for in the historic district as of September 1986. In May 1988 the historic zone was extended to include the property at 202 Hope Street. Therefore, the building official was required to stay any permit originally issued and submit the application to the town council for consideration. Extending the historic zone to include 202 Hope Street rendered the permit invalid.

In order to reissue the necessary demolition permit, the building official submitted the application to the town council as required. The Historic District Commission unanimously recommended to the town council against demolition, and the permit was properly denied. In creating the Historic District Commission, the town council did not divest itself of jurisdiction to entertain such matters. Further, the fact that the Historic District Commission had the delegated authority of its own to deny the permit outright does not lessen the effect of its recommendation to the town council or the town council's subsequent denial. Both actions were within the authority delegated by chapter 24.1 of title 45.

Lastly the petitioners never received approval, as required by law, from CRMC on their application for a demolition permit. The CRMC stayed any action until such time as the town council resolved the matter. Any permit received from the building official alone remained ineffective until final approval. This factor renders the petitioners' claim of good-faith reliance devoid of merit because they knew any demolition was precluded until CRMC issued approval.

For the foregoing reasons the petition for certiorari is denied and dismissed, the writ heretofore issued is quashed, and the papers in this case are remanded to the town council with our opinion endorsed thereon.